IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

OHIO CASUALTY INSURANCE CO.,

Plaintiff,

vs.

MADISON COUNTY, ILLINOIS, an Illinois municipal corporation, JOSEPH D. PARENTE, and

Defendants,

O'BRYAN CONSULTING, INC.,

Defendant/Third-Party Plaintiff,

vs.

ESSEX INSURANCE COMPANY,

Third-Party Defendant/Counter-Plaintiff,

vs.

MADISON COUNTY, ILLINOIS, an Illinois municipal corporation, JOSEPH D. PARENTE, and O'BRYAN CONSULTING, INC.,

Counter-Defendants.                                    No. 03-CV-00350-DRH

**MEMORANDUM AND ORDER**[1]

**HERNDON, District Judge:**

---

[1] This is one of two orders entered in this case today. This order deals solely with Ohio Casualty Insurance Company's complaint against Madison County, Illinois and Joseph D. Parente.

I. **Introduction**

Plaintiff Ohio Casualty Insurance Company ("Ohio Casualty") brought this declaratory judgment action pursuant to **28 U.S.C. § 2201** and **28 U.S.C. § 1332** against Madison County, Illinois ("Madison County") and Geraldine and Nevan Fisher (the "Fishers")[2]. **(Doc. 1)**. On August 11, 2004, Ohio Casualty filed its Third Amended Complaint against Madison County, Joseph Parente ("Parente"), Administrator of the Madison County Planning and Development Department, and O'Bryan Consulting, Inc., ("O'Bryan") seeking a declaration that it has no duty to defend them in a lawsuit filed by the Fishers, ***Fisher v. County of Madison, Illinois,* 03-CV-58-DRH (S.D. Ill. filed Feb. 3, 2003)** (Count I) and seeking reimbursement of the costs for defending O'Bryan in the ***Fisher*** suit (Count II). **(Doc. 51)**. By Memorandum and Order dated February 22, 2005 the Court found Ohio Casualty had a duty to defend O'Bryan in the ***Fisher*** suit. **(Doc. 110)**.

On August 25, 2004, O'Bryan filed a Third Party Complaint for Declaratory Judgment and Demand for Jury Trial against Essex Insurance Company ("Essex") asking the Court to determine whether Essex owes a duty to defend and/or indemnify O'Bryan in the ***Fisher*** suit and to determine the respective responsibilities of Essex and/or Ohio Casualty. **(Doc. 61)**. Essex in turn has filed a Counterclaim for Declaratory Judgment against O'Bryan, Madison County, and Parente seeking a

---

[2]Ohio Casualty voluntarily dismissed the Fishers from the suit on July 31, 2003. **(Doc. 4)**. Ohio Casualty then filed an Amended Complaint adding Joseph D. Parente to this suit. **(Doc. 25)**. The Court subsequently consolidated Ohio Casualty's claims against Madison County and Parente with its claims against O'Bryan Consulting, Inc., arising out of the same underlying complaint. **(Doc. 26)**.

declaration that it has no duty to defend or indemnify them in the *Fisher* suit (Count I) and seeking reimbursement of the costs for defending O'Bryan in the *Fisher* suit (Count II).[3]  **(Doc. 77)**.

Now before the Court is Ohio Casualty's Motion for Judgment on the Pleadings asking the Court to enter judgment on the pleadings against Madison County and Parente and find that Ohio Casualty has no duty or obligation to defend Madison County and Parente in the *Fisher* lawsuit.  **(Docs. 101 & 102)**.  Defendants Madison County and Parente oppose the motion.  **(Docs. 104 & 105)**.  For the reasons set forth below, the Court finds that Ohio Casualty has no duty to defend Madison County and Parente in the *Fisher* lawsuit.

## II. Background

### A. The *Fisher* Suit

Ohio Casualty's Third Amended Complaint for Declaratory Judgment rests on the Fishers' Third Amended Complaint.  **(Doc. 51, Ex. B)**.

In their Third Amended Complaint the Fishers allege sometime prior to October 18, 2001 Madison County Planning and Development Department sent an undated notice to the Bank of Edwardsville, as Successors Trustee under the Land Trust Agreement, stating the building or buildings on 3733 Ridgeview Road, Edwardsville, Illinois, were hazardous and were to be repaired or demolished within thirty (30) days or Madison County would undertake the task.  **(Doc. 51, Third**

---

[3]Essex voluntarily dismissed two of the Counter-Defendants, the Agents of Madison County and Levco, C.D.S., from the suit.  **(Doc. 112)**.

**Amended Complaint and Jury Demand ("Compl.") at Count I ¶ 11, Count II ¶ 10)**. The Fishers owned the land subject to the notice via a land trust. **(Compl. at Count I ¶ 10, Count II ¶ 9)**.

On November 12, 2001, Nevan Fisher sent notice to Parente regarding his contract to have the house, garage, and corn crib demolished and removed from the premises. **(Id. at Count I ¶ 12, Count II ¶ 11)**. On November 15, 2001, Geraldine Fisher obtained demolition permit numbers B01-1413 and B01-1414 from the Madison County Planning and Development Department to demolish the house, garage, and corn crib on the Fishers' property. **(Id. at Count I ¶ 13, Count II ¶ 12)**.

Between November 16-23, 2001, Scott Schmidt Excavating and Hauling performed the demolition of the alleged "dangerous structures" on the Fishers' property. **(Id. at Count I ¶ 14, Count II ¶ 13)**. Approximately two months after the Fishers allegedly corrected the ordinance violations on their property, Madison County, under the direction of Parente, solicited bids for the demolition of the Fishers' property. **(Id. at Count I ¶ 15, Count II ¶ 14)**. On January 26, 2002, O'Bryan submitted a bid to the Madison County Community Development Board to demolish the Fishers' property. **(Id. at Count I ¶ 16, Count II ¶ 15)**. On January 30, 2002, Madison County awarded a demolition contract to O'Bryan. **(Id. at Count I ¶ 17, Count II ¶ 16)**. On February 7, 2002, O'Bryan signed a contract, obtained the relevant permits, and demolished two barns and one metal shed on the Fishers' property. **(Id. at Count I ¶¶ 18, 19; Count II ¶¶ 17, 18)**. During the demolition, the Fishers allege Madison County, Parente, and

O'Bryan also took two antique vehicles owned by the Fishers, wood from one of the demolished barns, twenty truck loads of clean concrete, and street-sweeping vehicle parts from the metal shed on their property. (***Id.* at Count I ¶ 20, Count II ¶ 18**). On April 3, 2002, Madison County, under the direction of Parente, tendered payment of $2,900.00 to O'Bryan and filed a lien against the Fishers' property for that amount. (***Id.* at Count I ¶ 22, 23**).

Count I of the Fishers' complaint is a claim against Madison County, Parente, and O'Bryan for deprivation of property under **42 U.S.C. § 1983**. The Fishers allege that Madison County, Parente, and O'Bryan, individually and collectively, acted to violate their constitutional rights to their property in one or more of the following manners: (1) knowingly and intentionally or with reckless disregard destroyed their property; (2) knowingly and intentionally or with reckless disregard converted their personal property; or (3) entered upon the Fishers' land to destroy their property and to convert their personal property without due process of law. (***Id.* at Count I ¶ 24**). The Fishers ask for actual damages in excess of $75,000, attorneys' fees, and costs.

Count II of the complaint is a negligence claim (added by an amendment to the Fishers' complaint) against O'Bryan only. The Fishers allege that O'Bryan was negligent in one or more of the following: (1) negligently or with reckless disregard for the Fishers' rights destroyed their property; (2) negligently or with reckless disregard for the Fishers' rights converted their personal property; (3) negligently and carelessly entered upon the Fishers' land to destroy their property; or (4) failed to review Madison County records prior to demolishing the Fishers' property to determine whether the

dangerous structures had previously been demolished.  (*Id.* **at Count II ¶ 20**).  The Fishers allege as a result of O'Bryan's negligence they were deprived of their property. (*Id.* **at Count II ¶ 21**).  The Fishers ask for actual damages in excess of $75,000 and costs.  There is no claim for negligence against Madison County and Parente.

According to the Third Amended Complaint, Ohio Casualty has refused the tender of defense by Madison County and Parente.  **(Doc. 51, ¶ 11)**.

### B.  The Ohio Casualty Policy

Ohio Casualty issued its policy of insurance numbered BLO (02)52616136 to O'Bryan as the named insured.  **(Doc. 51, Ex. A)**.  The policy provided for Commercial General Liability ("CGL") insurance on a primary basis with an effective policy period of October 29, 2001 to October 29, 2002, and reads in relevant part as follows:

   **SECTION I- COVERAGES**

   **COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1.  Insuring Agreement**

   > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

>  (1) The amount we will pay for damages is limited and described in Section III - Limits Of Insurance; and
>
>  (2) Our rights and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES **A** and **B**.
>
> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
>  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
>
>  (2) The "bodily injury" or "property damage" occurs during the policy period.

\* \* \* \*

The policy also includes definitions of "occurrence" and "property damage," which provide, respectively, as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed

to occur at the time of the "occurrence" that caused it.

Finally, the policy contains the following pertinent exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

The policy also includes the General Liability Master Pak® Endorsement CG 83 30 07 99. The Endorsement includes a section entitled "Blanket Additional Insured (Owners, Contractors or Lessors)" which states, in pertinent part, as follows:

**1. BLANKET ADDITIONAL INSURED (Owners, Contractors, or Lessors)**

**WHO IS INSURED (Section II)** is amended to include as an insured any person or organization whom you are required to name as an additional insured on this policy under a written contract or agreement. The written contract or agreement must be:

(a) currently in effect or becoming effective during the term of this policy; and

(b) executed prior to the "bodily injury," "property damage," or "personal and advertising injury."

The insurance provided the additional insured is limited as follows:

1. That the person or organization is only an additional insured with respect to liability arising out of:

a. Real property you own, rent, lease, or occupy; or

  b. "your work" for that additional insured for or by you.

2. The limits of insurance applicable to the additional insured are those specified in the written contract or agreement or the limits available under this policy whichever are less. These limits are inclusive of and not in addition to the limits of insurance available under this policy.

3. The insurance provided the additional insured does not apply to liability arising out of the sole negligence of the additional insured.

4. The insurance provided the additional insured does not apply to:

  a. "bodily injury",

  b. "property damage",

  c. "personal or advertising injury" or

  d. defense coverage under the Supplementary Payments section of the policy arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including:

  (1) The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawing and specifications; and

  (2) Supervisory, inspection, architectural or engineering activities.

Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary or you request that it apply on a primary basis.

### III. Analysis

#### A. Motion for Judgment on the Pleadings Standard

**RULE 12(c)** permits a party to move for judgment on the pleadings after the close of the pleadings. **FED. R. CIV. P. 12(c)**[4]; *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* **163 F.3d 449, 452 (7th Cir. 1998) (citation omitted)**. As in **RULE 12(b)** motions, courts grant a **RULE 12(c)** motion only if "'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *City of South Bend,* **163 F.3d at 452 (quoting** *Craigs, Inc. v. General Elec. Capital Corp.*, **12 F.3d 686, 688 (7th Cir.1993))**. Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. *Id.* The court "'will view the facts in the complaint in the light most favorable to the nonmoving party,' *GATX Leasing Corp. v. National Union Fire Ins. Co.*, **64 F.3d 1112, 1114 (7th Cir. 1995)**; '[h]owever, [the court is] not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law.'" *Id.* (*R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* **895 F.2d 279, 281 (7th Cir. 1989))**.

---

[4]**FEDERAL RULE OF CIVIL PROCEDURE 12(c)** provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**FED. R. CIV. P. 12(c)**.

### B. Ohio Casualty's Duty to Defend Madison County and Parente in the *Fisher* suit

Illinois law treats the interpretation of an insurance policy as a question of law that the court may resolve summarily.[5] *See Connecticut Indem. Co. v. DER Travel Service, Inc.*, 328 F.3d 347, 349 (7th Cir. 2003)(citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). Whether an insurer must defend the insured is a question resolved by comparing the allegations of the underlying complaint to the insurance policy. *Id.* (citing *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995)). If the underlying complaint alleges facts within or *potentially* within policy coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). However, an insurer has no duty to defend where it is "'clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" *Connecticut Indem. Co.*, 328 F.3d at 349 (quoting *United States Fidelity & Guaranty Co.*, 578 N.E.2d at 930). The legal labels used by a plaintiff in the

---

[5]This is an action for declaratory judgment based on the Court's diversity jurisdiction. The parties do not contest that Illinois law applies to the substantive issues. When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits. *See Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002)(citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991)).

underlying case are not dispositive as to whether a duty to defend exists. ***Id.* (citing *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001))**. Furthermore, if the insurer relies on an exclusionary provision, it must be "clear and free from doubt" that the policy's exclusion prevents coverage. ***See Bituminous Casualty Corp. v. Fulkerson,* 571 N.E.2d 256, 262 (Ill. App. Ct. 1991)**. The Court must liberally construe the underlying complaint and the insurance policy in favor of the insured. ***See United States Fidelity & Guaranty Co.*, 578 N.E.2d at 930**. Keeping these principles in mind, the Court now turns to comparing the allegations of the underlying complaint with the policy.

Ohio Casualty argues that the Fishers' complaint alleges the intentional and knowing conversion and destruction of real and personal property and therefore fails to allege an "occurrence" within the meaning of the policy, which defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." **(Doc. 102, Mem. of Law in Support of Pl.'s Motion for Judgment on the Pleadings, at pp. 9-13)**. Ohio Casualty also argues that because the Fishers' complaint alleges the knowing and intentional destruction and conversion of property, the policy's intentional act exclusion applies, which excludes "'property damage'[6] expected or intended from the

---

[6]The policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."

standpoint of the insured." **(*Id.* at pp. 14-17)**.[7]

Madison County and Parente respond that they are not liable to the Fishers because the demolition of the buildings was authorized by Illinois statute, and the removal of personal property from the Fishers' property was unauthorized. **(Doc. 105, Responding Brief of Defs. to Pl.'s Mot. For Judgment on Pleadings on Third Amended Compl. at p. 4)**. With regard to the allegations of improper destruction of buildings, Defendants contend their actions "were not unlawful or intentional acts, but actions lawful and pursuant to law and insured by" Ohio Casualty. **(*Id.* at p. 4)**. With regard to the allegations of improper removal of personal property, Defendants reason that because it was not pursuant to a contract or authorized by law, it could not be an intentional act and must be an occurrence as a matter of law, asserting the claim is at most one for negligent supervision. **(*Id.* at pp. 4-5)**. Defendants also contend that there are questions of fact that remain precluding the Court from ruling on the motion. **(*Id.* at pp. 5-6)**.

While the Court is mindful of the uphill battle these Defendants face in arguing for coverage, Defendants' arguments suggest they misunderstand the standard for whether an insurer has a duty to defend its insured. The key here is to compare the allegations in the Fishers' complaint to the policy language, ***see***

---

[7]Ohio Casualty also mentions "[t]hat alternatively, as to the County and Parente, the policy applies only as excess insurance." **(Doc. 102, Mem. of Law in Support of Pl.'s Mot. For Judgment on the Pleadings at p. 4)**. Ohio Casualty does not develop this argument any further, so the Court will not address it.

***General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.,* No. 98814, – N.E.2d – , 2005 WL 674685, *5 (Ill. Mar. 24, 2005**), not what the Fishers could have alleged or what the evidence may later show. In Count I (the only count against Madison County and Parente) the Fishers clearly allege intentional conduct excluded by the policy. For example, the Fishers allege Madison County and Parente acted to violate their constitutional rights to their property in one or more of the following manners: (1) knowingly and intentionally or with reckless disregard destroyed their property; (2) knowingly and intentionally or with reckless disregard converted their personal property; or (3) entered upon the Fishers' land to destroy their property and to convert their personal property without due process of law. **(Compl. at Count I ¶ 24)**. They further allege that O'Bryan, "along with employees and agents of defendant, Madison County, under the direction of defendant, Joseph D. Parente, individually, acted intentionally to deprive the plaintiffs of their Constitutional rights by converting plaintiffs' personal property." **(*Id.* at Count I ¶ 26)**. Unlike the Fishers' allegations against O'Bryan, their claims against Madison County and Parente preclude a finding of negligence and therefore are excluded from coverage.

In the alternative, Madison County and Parente argue that the policy's "Coverage B Personal and Advertising Injury Liability" bring the Fishers' claims against them within the policy's coverage. The policy covers "personal and advertising injury," defined as "injury, including consequential 'bodily injury' arising out of one or more of the following offenses: . . . c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person

occupies, committed by or on behalf of its owner, landlord or lessor." **(Doc. 51, Ex. A)**. As Ohio Casualty correctly points out, "[t]he allegations here are not that the Fishers – the property owners – wrongfully removed property or demolished structures. Rather, the allegations are the County and Parente, among others, wrongfully removed personal property and demolished real property. There is simply no question that Coverage B has no application to this case." **(Doc. 113, Pl.'s Reply in Further Support of Its Motion for Judgment on the Pleadings Against Defs.' Madison County and Joseph D. Parente at pp. 6-7)**. Moreover, even assuming coverage applied under this section, Madison County and Parente would still be out of luck given the Court's finding that the intentional act exclusion applies. Put simply, Ohio Casualty has no duty to defend Madison County and Parente in the Fishers' lawsuit.

### IV. Conclusion

In conclusion, the Court finds Ohio Casualty has no duty to defend Madison County and Parente in the *Fisher* suit. Accordingly, the Court **GRANTS** Ohio Casualty's Motion for Judgment on the Pleadings. **(Doc. 101)**. Ohio Casualty's Motion to Strike Madison County and Joseph Parente's Affirmative Defenses is **DENIED** as moot. **(Doc. 78)**.

**IT IS SO ORDERED.**

Signed this 2nd day of June, 2005.

/s/   David RHerndon
United States District Judge